EVA HOBBS, Appellee, v. IOWA MUTUAL BENEFIT
ASSOCIATION, Appellant.

1. **Life Insurance**: PROHIBITED OCCUPATION: SUBSEQUENT CHANGE
OF EMPLOYMENT: FORFEITURE. By the terms of a certificate of
life insurance in a mutual benefit association, the insured was per-
mitted to engage in a lawful occupation, excepting those of an
extra hazardous nature, including, among others, that of car-
coupler. At the time that the certificate in controversy was
issued, the insured was employed as a car-sealer, but such occupa-
tion was not considered as extra hazardous. Subsequently, how-
ever, the insured was employed as a car-coupler, and while so
engaged, he received an injury from which he died. The con-
tract of insurance contained nothing in regard to a change of
employment by a member. *Held*, that the insured, being engaged
in a lawful occupation, which was not hazardous at the time of
the issuance of the certificate, the agreement whereby he became
a member of the defendant association was valid, and that his
subsequent change to a hazardous occupation did not render the
certificate void.

2. **Mutual Benefit Association**: CHANGES IN ARTICLES OF
INCORPORATION: EFFECT ON CERTIFICATES PREVIOUSLY ISSUED.
Subsequent to the time of issuing the certificate in controversy,
the defendant adopted an article of incorporation prohibiting its
members from engaging in the occupation of coupling cars, and
providing that the association should not be liable by reason of
any injury or death resulting therefrom. *Held*, that as the certifi-
cate in this case contained no authority for any material change
in its provisions or conditions, nor made the articles and by-laws
at any time adopted binding upon the insured, the fact that the
insured engaged in an employment forbidden by the above article
did not work a forfeiture of his certificate.

*Appeal from Des Moines District Court.—HON.*
CHARLES H. PHELPS, Judge.

TUESDAY, FEBRUARY 3, 1891.

ACTION on a certificate of membership issued by
defendant to Richard Hobbs for the benefit of the
plaintiff. A jury was impaneled to try the cause, and
after the evidence was submitted, by direction of the
court, it returned a verdict for the plaintiff for the sum

of one thousand and nineteen dollars and sixty-seven cents. A motion for a new trial filed by the defendant was overruled, and judgment was entered in favor of the plaintiff for the amount of the verdict and costs. The defendant appeals.—*Affirmed.*

    *A. H. Stutsman* and *Dodge & Dodge,* for appellant.

    *Powers & Huston,* for appellee.

    ROBINSON, J.—The defendant is a corporation organized under the laws of this state. On June 22, 1886, it issued to Richard Hobbs, on his application, a certificate of membership, of which the following is a copy.

    " *This certificate of membership witnesseth :* That Richard Hobbs is a member of division A of the Iowa Mutual Benefit Association, and in consideration thereof and the future payment of all annual dues and assessments, as provided by the articles of incorporation, which are hereby made a part of this contract, the Iowa Mutual Benefit Association agrees to pay Mrs. Eva Hobbs, his wife, two thousand dollars ($2,000), said sum to be paid within ninety days after presentation and acceptance of proof of death of said member. If, however, the person named in this certificate continues a member, and be living on the twenty-second day of June, 1892, then the full amount named herein shall become due and payable to the said member within ninety days after identification. * * * This certificate is issued and accepted upon the following expressed conditions : *First.* If death occurs within five years, one-half of the sum named shall be paid. *Second.* Application is made a part of this contract. *Third.* Agree to pay annual dues and assessments within thirty days, etc., or forfeit certificate and membership. *Fourth.* Written or printed notices deposited in post-office shall be sufficient. *Fifth.* If death occurs before payment, assessment shall be taken from amount due.

And, *sixth*, provides for making and filing proof of death."

Richard Hobbs died on July 14, 1889, and proof of his death was duly furnished on the twenty-second day of that month.

I.  The defendant denies liability on the certificate in suit, on the alleged ground that the death of Hobbs resulted from his engaging in an employment in violation of the contract of insurance.  That contract, in terms, includes the articles of incorporation of defendant, and the application for membership of Hobbs.  The portions of that application material to an examination of the questions presented are as follows:

1. LIFE insurance: prohibited occupation: subsequent change of employment: forfeiture.

"The undersigned desires becoming a member of division A of your association, and securing a certificate of two thousand ($2,000) dollars, subscribes to the following regulations and conditions of the association: To pay in to the secretary six ($6) dollars annually for the next three years, and, thereafter, half of this amount during the remainder of my life, or term of my certificate.  Name, Richard Hobbs.  Address, 1305 Corse street.  Born, January 29, 1859.  Beneficiary, Mrs. Eva Hobbs.  [Employment of Richard Hobbs not given.] It is hereby agreed that the above and foregoing application, with the declarations and statements therein made shall form the basis of this contract.  *  *  *  If death is caused by the applicant's own immorality, dissipation, drunkenness or violation of any law of the land, or by being engaged in active military service, that then, and in either event, this contract shall become null and void, and all money which shall have been paid shall be forfeited, and the certificate issued to the applicant shall not be binding upon the association.  Dated June 7, 1886.

    "[Signed]                    RICHARD HOBBS."

Among the articles of incorporation in force when the certificate was issued was the following:  "Article 5, section 1.  Any person of good health and temperate

habits, if not less than fifteen, nor more than sixty-five, years of age, who is not employed in any extra hazardous business, and who shall have passed satisfactorily the required medical examination made by a physician holding the degree of M. D., may be admitted as a member of this association by the approval of the medical directors and executive committee." One of the by-laws of the defendant, also in force at that time, is as follows : "By-law number 12. Members are allowed to engage in any lawful occupation, excepting extra hazardous, including in extra hazardous submarine operations, the production of highly inflammable or explosive substances, entering any military or naval service, except the militia when not in active service, brakeman upon freight trains, car-couplers, sailors or miners under ground."

At the time the certificate was issued, Hobbs was a car-sealer, and that fact was known to the defendant ; but, at the time of his death, he was a car-coupler, and had been so engaged for about three months. While performing his duty as a car-coupler he received an injury which caused his death within a few hours. The appellee contends that Hobbs, in following the occupation of a car-coupler, did not violate his contract of insurance. That portion of the articles of incorporation of defendant which we have set out provides that a person otherwise qualified, "who is not employed in any extra hazardous business," may be admitted as a member of the association.

It is not claimed that the occupation of car-sealer is extra hazardous. It follows, therefore, that Hobbs was qualified, as to his occupation, to become a member of the association, when the contract of insurance was entered into, and that he became a member of the association under a valid agreement. The question is, did he cease to be such member by reason of his change of employment ? By-law number 12 defines the occupation of "car-couplers" as extra hazardous. If it be conceded that the by-law named became a part of the contract of

insurance, we have the case of one who, being a member of the association, adopted an occupation which would have disqualified him as an original applicant for membership. The contract of insurance contains nothing in regard to a change of occupation by a member. By-law number 12 allows members to engage in any lawful occupation which is not hazardous, but does not state the effect which shall follow their engaging in one which is hazardous. It will not do to say that hazardous occupations are forbidden by necessary implication, and, therefore, that the forfeiture of the certificate must follow the adoption of such an occupation, for the reason that the certificate and application specify the conditions on which the contract shall become void, and the adoption of a hazardous occupation is not one of them. The parties have considered that subject, and it must be presumed that all the conditions of forfeiture upon which they agreed are set out, in terms, in the various instruments which constitute their agreement. Moreover, if the interest of the parties were in doubt, we should incline to adopt that interpretation of their agreement which would sustain it, rather than one which would declare it void, by reason of a violation of its provisions. In our opinion, the change of occupation in question did not have the effect, under the by-law specified, to render the certificate void. See *Sanford v. California F. M. F. I. Ass'n*, 63 Cal. 547.

II. On November 2, 1886, the defendant adopted an article of incorporation, of which the following is a copy: "Members of this association are allowed to engage in any lawful occupation except extra hazardous, which shall include submarine operations, the production of highly inflammable or explosive substances, serving in the military or naval service, except the militia when not in active service, braking upon freight trains, coupling cars, serving as a sailor, or coal mining while under ground, and the association shall not be liable to any person by reason of any injury or death caused by, or resulting from, any violation of this

2. MUTUAL benefit association: changes in articles of incorporation: effect on certificates previously issued.

article." It will be noticed that this article was adopted after the certificate in suit was issued. The appellant contends that it was binding upon Hobbs, and became a part of his contract.

The members of a mutual insurance company are presumed to have knowledge of the articles of incorporation and by-laws of the company. *Walsh v. Ins. Co.*, 30 Iowa, 133; *Simeral v. Ins. Co.*, 18 Iowa, 319. But it does not follow that they will be bound by all those adopted after their contracts of membership are made. Whether they will be or not will depend upon the terms of their contract. If that provide that members shall be bound by all articles and by-laws which may at any time be adopted, we know of no reason why it is not valid. In such cases, changes made are not in violation of the contract, but are in harmony with it. But this is not a case of that kind. We look in vain for anything in the original agreement which, in terms or by implication, authorized any material change in its provisions or conditions. Hobbs was qualified to enter into it. The conditions on which the rights it conferred upon the beneficiary should be forfeited were stated, and we think the defendant had no right to alter them at will. The business of a car-sealer requires the person who follows it to be about the railway cars, and at times it may lead him into places of danger. The business was not hazardous within the meaning of the agreement when it was made, but, if the claim of appellant be true, it had the power to declare it so afterwards, and to forfeit the agreement by so doing; and yet the fact that he was engaged in that business may have been the principal inducement for the assured to have entered into the agreement. It is true that defendant is a mutual association, and that, under its articles of incorporation, Hobbs had the right to cast two votes at its annual meetings; but that fact did not make his agreement subject to change at the pleasure of the association. It is said that the article under consideration imposed upon Hobbs the observance of no duty which he was not bound to observe before its adoption; that it

in no way impaired any vested right; that it in no way conflicts with the laws of the association as they existed at the time he became a member; that, as it was made a part of the organic law of the association, he must be held to have assented thereto ; that there is a distinction between articles of incorporation and by-laws, and that, although vested rights may not be disturbed by the adoption of by-laws, they may be by the adoption of articles of incorporation, for the reason that they are adopted not by the directors, but by the members.   We do not think these claims of the appellant are in all respects well founded.   As we have already said, the article in question, if applied to the certificate in suit, would have the effect to create a new condition of forfeiture without the consent of Hobbs.   As a member of the association he may have been bound by the article as applied to agreements made after its adoption, but not to the one he had already made.   As applied to that it would destroy his vested right to follow the occupation of a car-coupler, without defeating the right of the beneficiary of the certificate to recover upon it.

Appellant relies upon the cases of *Supreme Commandery v. Ainsworth*, 71 Ala. 436, and *Korn v. Mutual Assurance Society*, 6 Cranch, 192, especially the former. But we think the first case will be found, on careful examination, to sustain the conclusions we have announced. The corporation in that case had issued a certificate, upon condition that the person to whom it was issued should comply with the "general laws of the order then in existence, or which might thereafter be enacted." The certificate was accepted in writing by the assured, subject to the laws then in force, or which might thereafter be enacted.   The certificate recited on its face that any violation of "the requirements of the laws now in force, or hereafter enacted, governing the order or this class, shall render this certificate null and void."   Also that a condition, upon which the obligation of the certificate depends, was "the full compliance with all the laws of the order now in force, or that may hereafter be

enacted." Subsequent to the issuance of the certificate, a law was adopted, by the terms of which a certificate of that class was forfeited, if the member, whether sane or insane, should take his own life. The court held that the parties to the certificate intended that it should be subject to the laws of the association adopted subsequent to its issue. But the court said that "a corporation has no capacity, as the legislative power from which it derives existence has no competency, by laws of its own enactment, to disturb or divest rights which it had created, or to impair the obligation of its contracts, or to change its responsibilities to its members, or to draw them into new and distinct relations."

In *Korn v. Society, supra,* it appeared that the members of the society had signed an obligation to adhere to the constitution, rules and regulations which were already established, or which might thereafter be established. We conclude that the article adopted in November, 1886, did not become a part of the contract upon which this action is based. See *Morrison v. Ins. Co.,* 59 Wis. 162; 18 N. W. Rep. 13. The evidence failed to show that there was any forfeiture of the certificate, and, as there was no ·dispute as to the material facts, the court properly directed a verdict for the plaintiff.

The conclusions announced make it unnecessary to decide other questions discussed by counsel. The judgment of the district court is AFFIRMED.