EDWARD NORTON and MARY NORTON, Appellants, v. CATH-
OLIC ORDER OF FORESTERS.

**Mutual insurance:** CONSTITUTION AND BY-LAWS: NOTICE. An insurance contract in which the assured agrees to be bound by the constitution and by-laws then in force or thereafter to be enacted is valid; and the assured is bound to take notice of by-laws, whether adopted prior or subsequent to the contract, if the contract makes the same a part thereof.

**Same:** CLASSIFICATION OF RISKS: REASONABLENESS. Although the occupations of brakeman and yard switchman were both classified as hazardous risks at the time the certificate was issued, still a subsequent by-law declaring the occupation of switchman in railroad yards an extra hazardous risk and not to be insured against, was not objectionable as an unreasonable classification.

**Same:** CHANGE OF OCCUPATION: VESTED RIGHTS. A benefit certificate holder who is bound by his contract to take notice of any reclassification of risks subsequently made, has no vested right which is impaired by the adoption of a by-law rendering an occupation, which he subsequently engages in, of a prohibited class and declaring void the certificate of one engaged therein.

**Mutual insurance:** FORFEITURE: WAIVER. A waiver is a voluntary relinquishment of a known right, and before it will be enforced it must clearly appear that the party against whom enforcement is sought was in possession of all the material facts: so that the acceptance of assessments or expense money incident to proof of death by a mutual insurance company, without a knowledge that assured had engaged in a prohibited occupation rendering his certificate void, was not a waiver of his right to insist on a forfeiture of the certificate.

*Appeal from Clinton District Court.*— HON. JAMES W. BOLLINGER, Judge.

TUESDAY, FEBRUARY 11, 1908.

REHEARING DENIED, TUESDAY, MAY 12, 1908.

SUIT on a benefit certificate of insurance issued by the defendant on the life of John F. Norton. There was a trial to the court and a finding and judgment for the defendant. The plaintiffs appeal.—*Affirmed.*

*Wolfe & Wolfe,* for appellants.

*Ellis & McCoy,* for appellee.

SHERWIN, J.— The certificate sued on was issued in 1901 and named the plaintiffs as beneficiaries. At the time

he became a member of the order, John F. Norton was a railroad brakeman, which occupation, together with that of yard switching and the switching incident to the work of a brakeman, were permitted by the laws of the defendant, but were classed as hazardous risks. The certificate expressly provided that it was issued "upon condition that said member complies in the future with the laws, rules and regulations now governing the said order, or that may hereafter be enacted by the said high court." In 1903 the laws of the order were changed by an enactment which provided that "persons engaged in any of the following occupations shall not be eligible to regular membership in the order, . . . railroad switchman in yards; switchmen, except in towers, in cities of 10,000 population and upwards. . . . Any member of the order who changes his occupation from either the ordinary or hazardous class to the prohibited class, shall by that fact lose his membership in the order." This change became effective on the 1st of January, 1904. When the new law became effective, and for more than a year thereafter John F. Norton was employed as a brakeman, as he was when the certificate issued. He went to California in 1905, and was killed in Sacramento while engaged in the occupation of switchman in the railroad yards in that city. The trial court held that the change in the constitution and by-laws placing yard switchmen in the prohibited class was reasonable and did not impair any vested right under the certificate.

It is settled by our own cases that a contract whereby the insured agrees to be bound by the constitution and by-laws then in force or which may thereafter be enacted is valid and binding. *Ross v. Brotherhood of America,* 120 Iowa, 692, and cases therein cited; *Field v. Association,* 117 Iowa, 185. It is also the rule in this State that the members of mutual associations are bound to take notice of and be governed by the by-laws of such associations, and that, where the con-

1. MUTUAL INSURANCE: constitution and by-laws: notice.

tract of insurance makes by-laws adopted after the contract is made a part thereof, the insured is bound to take notice of them and be governed thereby. *Fitzgerald v. Ass'n,* 106 Iowa, 457; *Hobbs v. Ass'n,* 82 Iowa, 107; *Ross v. Ass'n, supra.*

The appellants urge that the placing of switchmen in yards in the prohibited class was unreasonable, because the occupations of brakemen and switchmen are so closely allied

2. SAME: classification of risks: reasonableness.

that no just and reasonable distinction between them can be made; and that the change affected the value of the contract and impaired vested rights. Of these contentions in their order. We do not think it can be said that the occupation of brakeman on a freight train is as dangerous to human life as that of a switchman in a railroad yard. While it is true that the former is called upon to do a certain amount of switching while his train is out on the road, such switching is occasional only, and is usually done in a way that is not particularly dangerous. On the other hand, the work of a yard switchman is or may be attended with constant danger because of the multiplicity of tracks, cars, and moving trains. There may be two or more switch engines at work in the yard at the same time, and all of the tracks therein may be alive with moving cars and engines. The work of a yard switchman in such a place must of necessity be more dangerous than switching on a single side track where but the one engine or train is involved. So far, then, as the classification alone is concerned, we think it must be held reasonable, and one which the association might make, having in view the general welfare of the order. See *Ross v. Ass'n, supra.*

If the change was a reasonable one, considered apart from its effect on the contract in question, it seems to us that it must be held reasonable in relation thereto. When

3. SAME: change of occupation: vested rights.

the insured became a member of the order, he was engaged in an occupation which, while classed as hazardous, was not prohibited. He contracted to

be bound by the laws of the order which might thereafter be enacted. The law which was subsequently enacted did not put his then occupation nor any of the work properly incident thereto into the prohibited class. It is manifest, therefore, that, had he continued in the same work, the change would not have affected his contract or impaired any vested right, if, indeed, it can be said that a vested right in the respect herein mentioned can ever be acquired under a contract authorizing changes in the fundamental law and agreeing to be bound thereby. If the change when made did not impair the value of his contract, only as such impairment was occasioned by the possibility that he might in the future desire to enter the prohibited class, we do not see wherein he has any just cause for complaint. A contract whereby it is agreed that changes in the fundamental law may be made without limitation confers wide power, and, where the changes made are in strict accord with the former powers of the association, we are unable to see any justification for judicial limitation. For instance, the association had original power of classification. The change in the constitution and by-laws neither increased nor diminished such power, but made a new classification which was to govern in the future. Why should we say, under a contract giving unlimited power to change the laws, that a change of classification was not contemplated, but that some minor and unimportant changes in the administration of the affairs of the association were? It is clear that a change such as is contemplated by the contract can never destroy vested rights, for the simple and sufficient reason that the contract itself provides there shall be no vested rights. As we have shown, the change in question was made while the insured was still a brakeman, and that, after the occupation of switchman was placed in the prohibited class, he voluntarily engaged in such occupation. We are of opinion that no vested right was impaired, and that he was bound by the change. *Hobbs v. Ass'n, supra; Ross v. Ass'n, supra; Gilmore v.*

*Knights of Columbus,* 77 Conn. 58 (58 Atl. 223, 107 Am.
St. Rep. 17). In *Parish v. New York Produce Exchange
et al.,* 169 N. Y. 34 (56 L. R. A. 149, 61 N. E. 977), relied
upon by appellants, it is held that a reasonable change in by-
laws may be made, but not so as to destroy vested rights or
make a new contract. There was no agreement for a change
in that case, and the rule announced is undoubtedly correct.
In *Tebo v. S. C. of K. A.,* 89 Minn. 3 (93 N. W. 513), it
was held that a change in the by-laws without actual notice
to the insured was unreasonable and void. No other point
was decided. *Olson v. Court of Honor,* 100 Minn. 117,
(110 N. W. 374, 8 L. R. A. [N. S.] 521), relates to the
question of notice and follows the *Tebo* case. *Wist v. Grand
Lodge,* 22 Or. 271 (29 Pac. 610, 29 Am. St. Rep. 603), was
determined on the point that, by the language of the changed
law itself, it was prospective only.

There was evidence tending to show that, after the
death of the insured, the defendant, through its local camp
at Clinton, accepted an assessment which was due at the time
4. **MUTUAL INSUR-** of the death, and accepted the expense of pro-
**ANCE: forfeit-**
**ure: waiver.** viding proof of death, and this with knowledge
that the insured was killed while switching. On this evi-
dence a waiver of the forfeiture is insisted upon. A waiver
is the voluntary relinquishment of a known right, and, be-
fore it will be enforced, it must clearly appear that the party
against whom it is demanded was in possession of all ma-
terial facts affecting the same. In this case the trial court
found as a matter of fact that, when the money was accepted
by the defendant, it did not know, so far as the evidence
showed, that the insured was killed while engaged in the
occupation of switchman in a railroad yard. This finding
is entitled to the same consideration that we are required to
give the verdict of a jury, and we should not interfere there-
with unless it is unsupported by substantial evidence. The
evidence on the subject goes no further than to show that
the local officers were informed that the insured met his

death while switching. But unless he was engaged in the occupation of switching in a railroad yard, he had not forfeited his rights under the contract. All men know that brakemen on freight and other trains occasionally do switching, and such work was not in the prohibited class. Hence a statement that the insured was killed while switching did not necessarily mean that he had violated his contract and thus forfeited his insurance. And, unless the defendant knew that such was in fact the case, there could be no waiver.

The judgment is right, and it must be and it is *affirmed*.