PEOPLE ex rel. MOUNT v. CHAPTER GENERAL OF AMERICA, KNIGHTS OF ST. JOHN AND MALTA, et al.

(Supreme Court, Appellate Division, Second Department.    May 7, 1909.)

CONSTITUTIONAL LAW (§ 154*)—BENEFICIARY ASSOCIATIONS—OLD AGE BENE-
    FITS—VESTED RIGHTS.
        Laws 1892, p. 2022, c. 690, § 235, authorized the payment of benefits to
    a member of a benevolent association in case of sickness, disability, or
    death, or the payment of money on the expiration of a fixed period.
    Laws 1903, p. 1052, c. 450, § 1, amending section 235, recognized the there-
    tofore existing right of a beneficiary order to provide for the payment of
    money to a member on the expiration of a fixed period, and authorized
    its continuance by corporations which had prior to March 1, 1903, made
    such agreements with their members.    This law remained in force until
    after insured under a beneficiary certificate entitling him to annual money
    payments on attaining the age of 70 years had reached such age.    Held,
    that his rights under the contract became vested, and could not be im-
    paired by subsequent legislation restricting such associations to the mak-
    ing of contracts calling for the payment of money only in the event of
    sickness, disability, or death.
        [Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 154.*]

Appeal from Special Term, Westchester County.

Application by the People, on the relation of John A. W. Mount, for mandamus against the Chapter General of America, Knights of

St. John and Malta, and others. From an order directing a peremptory mandamus, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, GAYNOR, RICH, and MILLER, JJ.

Louis M. King, for appellants.
Leon L. Mott, for respondent.

RICH, J. The appellant Chapter General of America was incorporated for benevolent purposes under the provisions of chapter 256, p. 361, Laws 1881. The relator became a member of such corporation in February, 1888, receiving a certificate of membership in its endowment department, which provided that upon his death, and within 60 days after receipt and approval of satisfactory proofs of death, there should be paid to his wife by the corporation "one full assessment collected from each member in good standing in the endowment department at the time of his death, not, however, to exceed the sum of two thousand dollars," provided assessments thereafter levied were paid, and all laws, statutes, ordinances, rules, and regulations of the order were observed and complied with by the relator. At the time the certificate issued, a provision of the appellants' by-laws or constitution (both names being applied to it in the record) provided that any insured Sir Knight attaining the age of 70 years may receive for the term of five years an annual payment equal to one-fifth of the face value of his certificate, which payment to the extent made shall be in satisfaction of his claims against the order under his certificate, and shall be so expressed by receipt to the Grand Almoner as well as by indorsation on his certificate. In said cases, such companion shall not be required to pay further assessments after the first payment made as above. Should the companion benefited die before he has received the face value of his certificate, the beneficiary will receive from the order the face value less the amount paid to the insured by virtue of this section. At some time prior to the year 1906, which is not clearly shown, this section was amended by inserting after the words 70 years the words, "with the consent of the beneficiary." With this exception, the section remained unchanged and in full force until after the relator reached the age of 70 years, at which time, under its provisions, he demanded of the appellant the sum of $400 as the one-fifth part of the face value of his certificate which was paid on November 18, 1905. On November 18th of the following year $400 more was paid to him and receipted for. In 1906 the appellant amended the section referred to by striking out the provision relieving a member from the payment of assessments after the first payment made under its provisions, and inserting in lieu thereof the following:

"In such case said companion shall be required to pay further assessments until the last payment has been made as above."

This was done because of a decision of the insurance department of the state that said section was in conflict with existing statutes, "in that the same covered the issuance of a nonassessable contract which is repugnant to the spirit of the law governing mutual benefit fraternities," and in 1908 such department held further that "fraternal

beneficiary societies, under the provisions of article 7 of the insurance law (Laws 1892, p. 2017, c. 690), can make a contract calling for the payment of moneys in the event of the happening of but three contingencies, viz.: sickness, disability, or death," and that benefits paid under the old age agreement, in absence of proof of physical disability, would be an ultra vires act on the part of the corporation, and therefore unlawful. On January 11, 1908, the appellant informed the relator of these rulings and the amendment of section 88 of its by-laws to conform therewith, and that, "in consequence, no further payments can be made under our by-laws relating to old age claims until the same are amended to conform to the insurance laws of the state of New York," and demanded the assessments called and payable under the amended by-law (which was regarded as retroactive) upon the endowment certificate held by the relator from the time of the payment of the last assessment by him prior to November 18, 1905, amounting to $120. These assessments the relator declined to pay, and on February 27, 1908, he was notified of his suspension because of such nonpayment. On March 18th following his suspension the relator instituted this proceeding for a peremptory writ of mandamus commanding the corporation to reinstate him "as an endowment member of said order in good standing and to all further order or relief, as the court may see fit to grant." Upon the hearing at Special Term, the motion was granted and an order directing a peremptory writ was made requiring the defendant and its officers to forthwith call a meeting "and adopt a resolution rescinding the suspension of the relator from all rights and benefits as an endowment member of the respondent, and adopt a resolution reinstating the relator to all his rights and benefits in said respondent corporation as an endowment member thereof upon his paying to the respondent all assessments last due to and inclusive of the one upon call No. 307, and that thereupon the said board of directors of the respondent direct the secretary of the respondent to forthwith issue a call for one assessment on each unsuspended member of the respondent, and that the sum of four hundred ($400) dollars, if said sum be raised by such assessment, be paid to the relator, and, should the amount paid to the treasurer upon such assessment call amount to less than the sum of four hundred ($400) dollars, then the amount actually received by the treasurer of respondent upon the secretary's call shall be paid to the relator." From that order this appeal is taken.

In the opinion by the learned justice presiding at Special Term he states his conclusions to be, first, that the provisions of section 88, under which the contention arises, providing for payment to a member upon his attaining the age of 70 years, were authorized by section 235 of the insurance law, enacted in 1892, as to associations doing business in this state prior to such enactment; second, that the provision of said section prior to the amendment of 1906, relieving a member from the payment of assessments after the first payment made, was invalid because repugnant to the general sense of the law governing mutual benefit fraternities; that the amendment of 1906 was retroactive in its effect, binding upon the relator and required him to pay

all of the assessments called back to the time when he received his first one-fifth payment; third, that appellant's refusal to continue such payments being coupled with the demand for the payment of such assessments, so far excused the relator as to relieve him from the penalty of suspension, and, also, that the relator was entitled to reinstatement upon the payment of such assessments, and to be paid the sum of $400 upon his filing with the defendant the consent of the beneficiary named in his certificate.

The certificate of authority issued by the insurance department to the appellant was under the provisions of chapter 256, p. 361, Laws 1881. That statute authorized an agreement by corporations carrying on such business with its members, "whereby upon the decease or sickness or other physical disability of a member" money or other benefit, relief, or aid should be paid. In December following the enactment of this statute the Supreme Court in Supreme Council of the Order of Chosen Friends v. Fairman, 62 How. Prac. 386, in which case it was shown that the constitution of the plaintiff (organized under the laws of Indiana) provided for payment to members of a sum not exceeding $3,000 when they reached the age of 75 years, held that the attainment of that age by a member was a "physical disability" within the true intent and meaning of the statute. The court says:

"That old age causes 'physical disability' is a fact which our senses continually attest. These mortal bodies are certain to fail by the lapse of years alone, though sickness, disease, or accident do not visit them. There is a period, too, which human experience has fixed as the time when the vital forces are lessened, and when 'physical disability,' to a certain extent at least, must surely be present. The Psalmist says, 'The days of our years are three score years and ten'; and, while he admits what our observation has also discovered, that the number of those days may in exceptional cases be increased, yet both the constitutional and statute law of the state recognize the fact that at 70 years of age physical infirmity and disability are present (article 6, § 13, State Const.; 1 Rev. St. [6th Ed.] 388, § 6), and in so doing they have but expressed our own consciousness."

In 1892, by the enactment of chapter 690, § 235, Laws 1892, the Legislature expressly authorized the payment of benefits to a member "in case of sickness, disability or death, or for the payment of money upon the expiration of a fixed period, in case a death loss has not been incurred before the expiration of such period." In 1903 this section (235) was amended, and again the Legislature recognized the theretofore existing right of a fraternal or beneficiary order to provide for the payment of money to a member upon the expiration of a fixed period, and authorized its continuance by corporations which had prior to March 1, 1903, made such agreements with its members. · Laws 1903, p. 1052, c. 450, § 1. This law remained in force until after the relator attained the age of 70 years and his rights under his contract had become vested, and they could not be divested or impaired by subsequent legislation. Ayers v. Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020. The learned Special Term was clearly right in the conclusion that the agreement of the appellant to pay the relator the face value of his policy in five equal annual payments upon his attain-

.ing the age of 70 years was not ultra vires, was authorized by law, and constituted an enforceable contract.

As to whether it was error to require the relator to pay any assessments after his reinstatement we are not called upon to pass. He has not appealed from the order of the Special Term, and cannot obtain in this proceeding the relief to which he might otherwise be entitled.

The order must be affirmed, with $50 costs and disbursements. All concur.